UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KRISTIE JONES                                                             PLAINTIFF

V.                           No. 3:20-CV-240-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                         DEFENDANT

**ORDER**

## I. Introduction

Plaintiff, Kristie Jones ("Jones"), applied for supplemental security income benefits on January 17, 2019, alleging disability beginning on January 1, 2017.[2] (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on March 25, 2020. (Tr. at 21). The Appeals Council denied her request for review on July 17, 2020, making the ALJ's denial of Jones's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[3] reverses the ALJ's decision and remands for further review.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] For supplemental security income claims, the first day of the relevant time-period is the day on which the application was filed. (Tr. at 10–12). In this case, the relevant time-period begins on January 17, 2019. *Id*.

[3] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  The Commissioner's Decision

The ALJ found that Jones had not engaged in substantial gainful activity since the application date of January 17, 2019.[4] (Tr. at 12). The ALJ found, at Step Two, that Jones had the following severe impairments: degenerative disc disease in the lumbar spine, degenerative joint disease in the left knee, diabetes mellitus, diabetic neuropathy, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. at 12).

After finding that Jones's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Jones had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional limitations: (1) she retains the mental ability to understand, remember, and carry out simple jobs and instructions; (2) she can make judgments in simple work-related situations; (3) she can respond appropriately to coworkers/supervisors, with occasional incidental contact that is not necessary to perform the work; (4) she can respond appropriately to minor changes in the usual work routine; and (5) she should avoid interaction with the public. (Tr. at 15).

---

[4] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

The ALJ determined that Jones was unable to perform any of her past relevant work. (Tr. at 19). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Jones's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as inspector and assembler. (Tr. at 20). Thus, the ALJ concluded that Jones was not disabled. *Id*.

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

3

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. Miller, 784 F.3d. at 477.

## B. Jones's Arguments on Appeal

Jones contends that the ALJ's decision to deny her application for benefits is not supported by substantial evidence. She argues that the ALJ did not properly evaluate the opinion of Dr. Kurt Piatkowski, D.O., Jones's treating physician.

Jones suffered from back pain and knee pain. Lumbar spine MRI confirmed that Jones had spondylosis, facet arthrosis, disc desiccation, disc bulge, and neuroforaminal stenosis (Tr. at 310, 524–526, 1124–1131). A lumbar CT scan showed facet hypertrophy. (Tr. at 1077). Jones's doctors administered over a dozen rounds of lumbar trigger point and steroid injections, and Jones also underwent

medial branch blocks and radiofrequency denervation. (Tr. at 507–512, 529–538, 549–550, 884–886, 938–941, 1201–1204). Dr. Piatkowski noted in October 2019 that Jones still had radiating pain in spite of these treatments. (Tr. at 1104–1107). He said her pain was aggravated by any activity. *Id*.

A right knee x-ray in April 2018 showed narrowing of the patellofemoral joint space. (Tr. at 422). An October 2018 left knee MRI showed chondrocartilage erosion of the medial and lateral compartments and joint effusion. (Tr. at 355). Bilateral knee x-rays showed medial joint space narrowing and patellofemoral changes. (Tr. at 891–895, 912–914). Jones underwent left knee surgery in November 2018 and the doctor said she would qualify for a total knee replacement. (Tr. at 334).

Jones pursued physical therapy and injections for her left knee. (Tr. at 520–522, 532–538). She was also evaluated for home health care in April 2019, and the nurse who did the evaluation estimated that Jones would need 14 hours per week in help with showering, hair care, meal preparation, laundry, housekeeping, and shopping. (Tr. at 1047–1061).

Dr. Piatkowski, who treated Jones for over a year, filled out a medical source statement on December 23, 2019. He opined that Jones could not perform even sedentary work and would miss more than three days of work per month, due to chronic back pain and knee osteoarthritis. (Tr. at 1267–1269). The ALJ found this opinion to be unpersuasive. (Tr. at 18–19).

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. See 20 C.F.R. § 416.920c(a)–(c)(2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, like treating relationship, provider specialization, supportability and consistency with the record. *Id*. While all of the factors may be considered, ALJs must specifically explain in their decisions how they considered supportability and consistency. *Id*.

Jones argues that the ALJ cherry-picked evidence to support his finding that Dr. Piatkowski's opinion was unpersuasive. The Court agrees. The ALJ wrote that "Dr. Piatkowski's opinion is not fully supported by his own objective findings, as he noted that the claimant had negative straight-leg raise testing, only a slightly antalgic gait, and satisfactory range of motion in the knee." (Tr. at 18). However, in the very same pages of clinic notes to which the ALJ cites, Dr. Piatkowski found positive straight-leg raises on the left and right (Tr. at 1107), as well as trigger points, muscle spasms, and paraspinal tenderness. (Tr. at 1094–1105). Dr. Piatkowski noted that Jones's daily activities had changed due to pain, and that her pain remained in spite of a variety of treatment modalities. *Id*. Instead of "satisfactory range of motion in the knee," which is what the ALJ wrote, the treatment record actually showed

painful range of motion in the knee. (Tr. at 18, 1105–1107). Jones didn't "only" have an antalgic gait; she also had a painful limp. (Tr. at 1107).

Moreover, the ALJ stated that Jones said her pain was controlled by medication, when actually, she said that the pain was still not well-controlled in spite of "NSAIDS, over-the-counter medication. stretching, rest, and ice." (Tr. at 456–457, 1105). Dr. Piatkowski actually wrote that Jones's low back pain continued to worsen in spite of physical therapy, home therapy, and pain medications. (Tr. at 1094–1095). Thus, the ALJ's evaluation and characterization of Dr. Piatkowski's opinion did not accurately reflect his medical findings and was not consistent with the overall medical record.[5]0

Accordingly, the Court finds that the ALJ failed to follow the regulations concerning evaluation of medical opinions. *Bonnett v. Kijakazi*, No. 21-1619, 2021 WL 4258770 (8th Cir. Sept. 20, 2021); *Starman v Kijakazi*, No. 2:20-CV-35-SRC, 2021 WL 4459729 (E.D. Mo. Sept. 29, 2021) (ALJ's failure to comply with opinion-evaluation regulation was legal error).

### IV. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

---

[5] The ALJ's error is compounded by the fact that he also found the two other medical opinions, those of the Disability Determination services medical experts, to be unpersuasive. (Tr. at 18). The Court is left to wonder on what the ALJ based his determination, given that he discounted *all* of the medical opinions.

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not properly evaluate the opinion of Dr. Piatkowski.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 5th day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE